ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| LUIS F. GONZÁLEZ VIGO<br><br>Recurrente<br><br>V.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrido | KLRA202500043 | *REVISIÓN ADMINISTRATIVA* procedente de Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 147319<br>Confinado Número: T2-17342<br><br>Sobre: No Concesión del Privilegio de Libertad Bajo Palabra – Reconsideración – Volver a Considerar |
|---|---|---|

Panel integrado por su presidenta, la Jueza Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de marzo de 2025.

Comparece ante *nos*, Luis F. González Vigo (González Vigo o recurrente) y nos solicita que revisemos una *Resolución* de la Junta de Libertad Bajo Palabra (JLBP) emitida el 24 de octubre de 2024, notificada el 21 de noviembre de 2024 y entregada al recurrente el 18 de diciembre de 2024. Mediante dicha *Resolución*, la JLBP denegó la libertad bajo palabra solicitada por el recurrente.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* recurrida.

**I.**

Surge del expediente ante nuestra consideración que, entre el 8 de agosto de 2014 y el 13 de abril de 2015, el recurrido fue sentenciado a treinta (30) años y tres (3) meses de prisión. Posteriormente, el 10 de septiembre de 2020, la JLBP adquirió jurisdicción sobre González Vigo. El 8 de mayo de 2023, se llevó a cabo la Vista de Consideración. Así las cosas, el 6 de junio de 2023,

la JLBP determinó no conceder el privilegio de libertad bajo palabra y estableció el proceso de revaluación y consideración del privilegio para mayo de 2024.

Consecuentemente, el 25 de junio de 2024, la JLBP emitió una *Resolución* mediante la cual ordenó al Programa de la Comunidad de Mayagüez que emitiera un Informe Complementario en el cual se investigara el hogar propuesto por González Vigo y la zona de exclusión con relación a la parte perjudicada. Así pues, se le requirió al recurrente que proveyera una vivienda alterna a la ofrecida en el año 2023.

Así, el 24 de octubre de 2024, la JLBP emitió una *Resolución*, notificada el 21 de noviembre de 2024 y entregada al recurrente el 18 de diciembre de 2024. En la misma, la parte recurrida determinó que el recurrente no cuenta con un plan de salida en ninguna de las tres (3) áreas y que, por consiguiente, no cualifica para beneficiarse del privilegio de libertad bajo palabra.

Insatisfecho, el 17 de enero de 2024, González Vigo compareció ante *nos* mediante una *Petición de Revisión Administrativa* y alegó la comisión de los siguientes errores:

a. **LA JUNTA DE LIBERTAD BAJO PALABRA ACTUÓ ARBITRARIA E IRRAZONABLEMENTE AL DENEGAR LA LIBERTAD DEL RECURRENTE FUNDAMENTÁNDOSE EN QUE EL HOGAR PROPUESTO NO ES VIABLE POR RAZÓN DE NO CUMPLIR CON LAS 30 MILLAS DE LA ZONA DE EXCLUSIÓN.**

b. **LA JUNTA DE LIBERTAD BAJO PALABRA ACTUÓ ARBITRARIA E IRRAZONABLEMENTE AL DENEGAR LA LIBERTAD DEL RECURRENTE FUNDAMENTÁNDOSE EN QUE EL AMIGO CONSEJERO RESIDIRÍA EN MAYAGUEZ [SIC].**

c. **LA JUNTA DE LIBERTAD BAJO PALABRA ACTUÓ ARBITRARIA E IRRAZONABLEMENTE AL DENEGAR LA LIBERTAD DEL RECURRENTE FUNDAMENTÁNDOSE EN QUE LA OFERTA DE EMPLEO DEBÍA SER EN UN LUGAR QUE CUMPLIERA CON LAS 30 MILLAS DE EXCLUSIÓN.**

**d. LA JUNTA DE LIBERTAD BAJO PALABRA ACTUÓ ARBITRARIA E IRRAZONABLEMENTE Y EN CONTRAVENCIÓN AL DEBIDO PROCESO DE LEY AL NO DAR NOTIFICACIÓN AL AQUÍ PETICIONARIO DEL REQUISITO DE LA ZONA DE EXCLUSIÓN Y LAS 30 MILLAS DE DISTANCIA EN VEHÍCULO DEL HOGAR DE LA PARTE PERJUDICADA.**

El 22 de enero de 2025, emitimos una *Resolución* mediante la cual le concedimos al Procurador General un término de veinte (20) días para que presentara su posición al recurso. El 12 de febrero de 2024, la parte recurrida presentó una *Solicitud de Término Adicional.* Posteriormente, el 19 de febrero de 2025, emitimos una Resolución mediante la cual le concedimos a la parte recurrida hasta el 10 de marzo de 2025, para presentar su posición al recurso. Así, el 10 de marzo de 2025, la JLBP a través del Procurador General, presentó un *Escrito en Cumplimiento de Resolución.* Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

### A. Revisión judicial de las determinaciones administrativas

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección,* 174 DPR 247 (2008).

La Sección 4.1 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9671). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para

asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson y otros v. Consejo de Titulares y otros,* 2024 TSPR 64, 213 ___ (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581 (2020); *Empresas Ferrer, v. A.R.Pe,* 172 DPR 254 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Capote Rivera y otros v. Voilí Voilá Corp. y otros,* 2024 TSPR 29, 213 DPR ___ (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra*; *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección. *Transporte Sonell, LLC. v. Junta de Subastas,* 2024 TSPR 82, 214 DPR ___ (2024); *OCS v. CODEPOLA,* 202 DPR 842 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su

discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra*, dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Torres Rivera v. Policía de PR,* 196 DPR 606 (2016). Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, 213 DPR ___ (2024). *González Segarra et al. v. CFSE,* 188 DPR 252 (2013).

Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque ésta no tiene que ser la única o la más razonable. *Vargas*

*Serrano v. Inst. Correccional,* 198 DPR 230 (2017). Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. Bella Retail Group, Inc. y otros, supra*; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, *supra*, las determinaciones de derecho pueden ser revisadas en su totalidad. *Torres Rivera v. Policía* de PR, *supra*, pág. 627.

Si bien es cierto que la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo, *Rebollo v. Yiyi Motors,* 161 DPR 69 (2004), los tribunales revisores descartarán el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía, supra.* Si la interpretación y la aplicación del derecho no es correcta, el foro apelativo está obligado a intervenir. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177 (2009). "En esas circunstancias, [el foro apelativo] cederá la deferencia que merecen las agencias en las aplicaciones e interpretaciones de las

leyes y los reglamentos que administra". *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021). Véase, además, *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Rolón Martínez v. Supte. Policía, supra.*

## B. Junta de Libertad Bajo Palabra

El Artículo VI, Sección 19 de la Constitución de Puerto Rico establece como política pública que el Estado habrá de: "[...] reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. P.R., LPRA, Tomo 1.

En este contexto la Ley Núm. 118 de 22 de julio de 1974, según enmendada (4 LPRA sec. 1501, *et seq.*) (Ley Núm. 118-1974), creó la Junta de Libertad Bajo Palabra, adscrita al Departamento de Corrección y Rehabilitación. Entre los poderes conferidos a la Junta está el decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico. De igual forma, en el uso de su discreción, la Junta tendrá facultad para revocar la libertad bajo palabra a cualquier liberado que, por su conducta, revele no estar aún preparado para beneficiarse plenamente del privilegio y el tratamiento que implica la libertad bajo palabra. Artículo 3 (a) y (b) de la Ley Núm. 118-1974 (4 LPRA sec. 1503).

De esta forma, este organismo tiene la autoridad de conceder a cualquier persona recluida en una institución correccional de Puerto Rico el privilegio de cumplir la última parte de su condena en libertad bajo palabra. *Benítez Nieves v. ELA et al.,* 202 DPR 818 (2019). Al conceder el privilegio, la Junta puede imponer las condiciones que estime necesarias. Artículo 3 de la Ley Núm. 118-1974, *supra.* Así, el liberado bajo palabra tiene una libertad

cualificada. *Benítez Nieves v. ELA et al., supra; Maldonado Elías v. González Rivera,* 118 DPR 260 (1987).

El Artículo 3-D de la Ley Núm. 118-1974 (4 LPRA sec. 1503d), establece los siguientes criterios que la Junta de Libertad Bajo Palabra debe considerar al momento de analizar el privilegio de libertad bajo palabra:

> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.

> (2) Las veces que el confinado haya sido convicto y sentenciado.

> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.

> (4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

> (5) El historial de ajuste institucional y del historial social y psicológico del confinado, preparado por la Administración de Corrección y el historial médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

> (6) La edad del confinado.

> (7) El o los tratamientos para condiciones de salud que reciba el confinado.

> (8) La opinión de la víctima.

> (9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

> (10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.

> (11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.

> La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.

Además, en virtud de su propia ley, la Junta tiene facultad y aprobó, el Reglamento Núm. 9232 del 18 de noviembre de 2020. Cónsono con esto, la Sección 10.1 del Artículo X del mencionado Reglamento establece que ¨[l]a Junta evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado en

reclusión¨. Asimismo, la Sección 10.1 (B) establece que, al evaluar los casos, la Junta tomará en consideración los siguientes criterios:

1. Historial delictivo.

    [...]

2. Una relación de liquidación de la(s) sentencias(s) que cumple el peticionario.

3. La clasificación de custodia, el tiempo que lleva en dicha clasificación y si hubo cambio de clasificación y las razones para ello.

    [...]

4. La edad del peticionario.

5. La opinión de la víctima.

    a. La opinión de la victima constituye un factor a ser considerado por la Junta, pero la determinación sobre el grado de rehabilitación de un peticionario y si está capacitado para continuar cumpliendo su sentencia en la libre comunidad es prerrogativa de la Junta.

6. El historial social

    [...]

7. Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.

    a. [...]

    b. [...]

    c. [...]

    d. Oferta de empleo y/o estudio.

    e. Residencia

        i. Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o en un programa interno.

        ii. De proponer una residencia, el peticionario proveerá el nombre completo, número de teléfono y correo electrónico de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.

        iii. [...]

iv.    [...]

v.    Para determinar si la vivienda propuesta es viable, la Junta considerará:

a. Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y como el peticionario se relaciona con estos.

b. Opinión de la comunidad sobre la determinación de conceder el privilegio y las personas con las cuales convivirá el peticionario.

c. Condición de la planta física de la residencia y cantidad de habitantes en la misma.

d. Si la residencia propuesta está relativamente cercana a la residencia de la victima de delito.

e. Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta, excepto se encuentre incluido en el contrato de vivienda o certificación de la administración correspondiente.

f. Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.

f. Amigo Consejero

i.    El amigo consejero tiene la función de cooperar con la Junta y el Programa de Comunidad del Departamento de Corrección y Rehabilitación del peticionario.

ii.    Requisitos

a)  [...]

b)  [...]

c)  [...]

d)  Ser residente de Puerto Rico. Puede residir en el área limítrofe al Programa de Comunidad con competencia. Debe tener contacto frecuente con el peticionario.

e)  [...]

f)  [...]

g)  [...]

Además, la Sección 10.1 inciso 12 del Artículo X del Reglamento Núm. 9232, *supra,* establece que la Junta tendrá discreción para considerar los mencionados criterios según

considere conveniente y cualquier otro meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad.

De otro lado, la Sección 8.1 del Artículo VIII del Reglamento Núm. 9232, *supra*, establece que en aquellos procedimientos que se celebren ante la Junta, en los cuales la Ley Núm. 118-1974, *supra*, otorgue a las víctimas participación, se le garantizará a la víctima de delito, entre otros cosas, el comparecer y ser escuchado, ya sea oralmente o por escrito a su discreción, para presentar ante los miembros de la Junta o del panel correspondiente de la Junta su opinión sobre: (a) el proceso de rehabilitación y la determinación que en su momento deba tomarse con relación al beneficio del privilegio, y/o (b) el impacto económico, emocional o físico que ha causado la comisión del delito sobre su persona y su familia.

Asimismo, la Sección 8.4 (B) (1) dispone que la víctima podrá emitir su opinión a la Junta, personalmente, oralmente o por escrito mediante cualquier sistema electrónico disponible, sobre el proceso de rehabilitación, la determinación que en su momento deba tomar la Junta y/o el impacto económico, emocional o físico que ha causado la comisión del delito a su persona y su familia.

**III.**

En su recurso, González Vigo adujo que la JLBP actuó arbitraria e irrazonablemente al denegarle su libertad fundamentándose en que el hogar propuesto no es viable por razón de no cumplir con las treinta (30) millas de la zona de exclusión. Indicó que la JLBP actuó arbitraria e irrazonablemente al denegarle su libertad fundamentándose en que el amigo consejero residiría en Mayagüez. Acentuó, además, que la JLBP actuó arbitraria e irrazonablemente al denegarle la libertad fundamentándose en que la oferta de empleo debía ser en un lugar que cumpliera con las treinta (30) millas de exclusión. Por último, señaló el recurrente que la JLBP actuó arbitraria e irrazonablemente y en contravención al

debido proceso de ley al no darle notificación del requisito de la zona de exclusión y las treinta (30) millas de distancia en vehículo del hogar de la parte perjudicada.

En cambio, la recurrida sostuvo que el dictamen recurrido se basó en la aplicación de las normas reglamentarias que estaban vigentes a la fecha en que se evaluó el caso y se emitió la *Resolución*. Sostuvo, además, que la residencia propuesta no puede considerarse como un hogar viable, pues su dueño se opone a que resida allí. Agregó que la distancia de la residencia propuesta por el recurrente y la residencia de la parte perjudicada es de aproximadamente 10 millas.

Asimismo, señaló que el amigo consejero propuesto no es viable, porque reside en el mismo pueblo de la parte perjudicada. Esgrimió que la primera oferta de empleo no era viable por ser en el pueblo de Mayagüez y la que sería en el pueblo de Cabo Rojo, tampoco es viable por estar a 11.5 millas del hogar propuesto. Finalmente, adujo que el expediente administrativo confidencial revela que una parte perjudicada se opuso a la concesión del privilegio al recurrente.

Según el Reglamento Núm. 9232, *supra*, se consideran varios factores en la evaluación de la concesión del privilegio de libertad baja palabra, entre ellos un plan de salida viable en el área de vivienda, si cuenta con un amigo consejero, la opinión de la víctima, oferta de empleo y la proximidad de la residencia propuesta con respecto a la de la víctima. No obstante, ninguno de estos factores es determinante por sí solo. Así, la decisión resulta de un análisis integral que recae en la discreción de la JLBP. Así pues, como Tribunal de Apelaciones, nuestra función no es sustituir el criterio de la JLBP, sino de asegurarnos de que la determinación haya sido una razonable, no arbitraria y basada en el expediente del caso.

Luego de un análisis detallado del expediente ante *nos*, pudimos corroborar que la residencia propuesta está relativamente cerca de la víctima. De igual forma, corroboramos que la opinión de la víctima es desfavorable a la concesión de este privilegio. Además, confirmamos que el amigo consejero propuesto y la primera alternativa de empleo, se encuentran en el mismo pueblo donde reside la víctima. Por consiguiente, resolvemos que, no se ha demostrado que la JLBP actuó de manera irrazonable o arbitraria en su decisión de denegar el privilegio.

Tampoco encontramos en la *Resolución* recurrida, ningún indicio de que la JLBP haya aplicado el nuevo Reglamento Núm. 9603 de 25 de septiembre de 2024, al caso ante *nos*. Por lo tanto, en vista de que la JLBP actuó dentro de su discreción y conforme a los criterios que establece la ley y su reglamento, entendemos que no existen motivos suficientes para intervenir en su determinación de denegar el privilegio de libertad bajo palabra al recurrente.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones